# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No. 1:25-cr-185-SDN |
| | ) | |
| ANNA LAROCHELLE | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

**NOW COMES** the Defendant, ANNA LAROCHELLE, by and through his Attorney, Chris A. Nielsen, and hereby respectfully presents to this Honorable Court, Defendant's Sentencing Memorandum.

## SUMMARY

Ms. LaRochelle asks this Court to consider sentencing her to the mandatory minimum sentence of 120 months with 5 years supervised release based on application of a corrected guideline computation as well as application of both U.S.S.G. § 5D1.1 and the sentencing factors set out in 18 U.S.C. § 3553(a) and in particular the nature and circumstances of the offender, see U.S. v. Martin, 520 F.3d 87, 91(1st Cir. 2008), in addition to the mandate from the United States Supreme Court in U.S. v Booker, 543 US 220 (2005), rendering the guidelines as advisory and not mandatory.

## LaRochelle's Pre-Sentence Report:

The revised pre-sentence report (hereinafter "PSI Report") calculates a guideline range for Defendant at a total offence level of 30, Criminal History Level II with

an advisory guideline range of 120[1]-135 months incarceration followed by Supervised Release for a period of 5 years to life.

**Sentencing Process:**

Under Gall v. U.S., 552 U.S. 38 (2007) and U.S. v. Martin, 520 F.3d 87, 91(1st Cir. 2008) the sentencing determination begins with the calculation of the advisory sentencing range. This process starts with the appropriateness of any Guideline departure. Martin, at pg. 91. The Court will then consider case and defendant specific facts as argued by the Government and the Defense for an appropriate sentence under the regime of 18 U.S.C. § 3553(a). The final sentence rests with discretion of the Court, however the Court must provide an explanation of its sentencing determination. See U.S. v. Jimenez-Beltre, 440 F.3d 514 (1st Cir. 2006) At sentencing, the Guideline determination is no longer Mandary, but advisory. U.S. v Booker, 543 US 220 (2005). Furthermore, a Judge has discretion to reject the Guideline range based upon a policy disagreement with the Guidelines. U.S. v Spears, 129 S. Ct. 840, 844 (2009); U.S. v. Boardman, 528 F.3d 86, 87 (1st Cir. 2008). Under the 2008 First Circuit case of U.S. v. Thurston, 544 F.3d 22 (1st Cir. 2008) First Circuit Courts are to gauge the procedural soundness and substantive reasonableness of the sentence. On appeal, "substantive reasonableness" is reviewed on an abuse of discretion standard. Thurston at pg 25.

---

[1] At a level 30 with a Criminal History Category of II, the Guideline range comes to 108-135 months. However, this matter has a 10-year mandatory minimum jail sentence by statute. 18 U.S.C. § 2252A(b)(2)

**18 U.S.C. § 3553(a) considerations:**

18 U.S.C. § 3553(a) sates in pertinent part that:

"The court, in determining the particular sentence to be imposed, shall consider--

**(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

**(2)** the need for the sentence imposed--

> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> **(B)** to afford adequate deterrence to criminal conduct;
>
> **(C)** to protect the public from further crimes of the defendant; and
>
> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

**(3)** the kinds of sentences available;

**(4)** the kinds of sentence and the sentencing range established for--

> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guideline,**(i)** issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code; and …

**(5)** any pertinent policy statement--

> **(A)** issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code; and…

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

**ARGUMENT**

The PSI report suggests a Guideline range of 120 to 135 months incarceration for Ms. LaRochelle, followed by a period of Supervised Release of 5 years to life along with mandatory restitution. The PSR did not recommend that Defendant be subject to a fine based on Ms. LaRochelle's need to find housing upon her release and meager finances. The PSR indicated that while under 18 USC §2259(c)(3), the Court may not seek restitution greater than $17,000.00 in this matter, it did not recommend nor suggest a minimum amount. Ms. LaRochelle agrees in not recommending a minimum amount and she asks This Court, and based on her aforementioned finances and need to establish housing upon her release, to not assess an amount of restitution against her.

Ms. LaRochelle's argument for a period of incarceration of 30 months is supported in Part F of the PSR where it details two separate reports commissioned by the United States Sentencing Commission (USSC) in both 2012 and 2021 wherein the USSC found that application of the Specific Offense Characteristics with respect to the age of the victim, use of a computer and number of images were leading to sentences that were too punitive. In both reports there was a concern that the sentencing enhancements in USSG 2G2.2 have not kept pace with technological advancements.

Rather, the USSC recommended that Courts, in determining the appropriate sentence, focus on factors involving the content of the offenders child pornography collection (taking into consideration the volume, type of sexual conduct depicted, ages of the victims and the organization, maintenance and protection of the collection over time), the degree of an offender's engagement with other offenders, in particular in an internet community devoted to child pornography and child sexual exploitation and lastly whether the offender has a history of engaging in sexually abusive, exploitative or predatory conduct in addition to the child pornography offense.

The PSR currently elevates the base level of 18 for this charge to a level of 33 on the grounds that Defendant possessed an image minor under the age of 12, possessed a sexually explicit image of a minor under the age of 2, has a prior conviction, engaged in an act of distribution, and that the offence utilized a computer. Should the Court follow the guidance of the USSC espoused in the 2012 and 2021 reports, Ms. LaRochelle suggests that a reduction of 2 levels is appropriate if the Court disregards the Specific Offence Characteristics that Ms. LaRochelle used a computer (USSG §2G2.2(b)(6))). This would result in an offence level of 31 before the reduction of 3 levels for Ms. LaRochelle's acceptance of responsibility resulting in an offense level of 28. When coupled with Ms. LaRochelle's criminal history score of II, the guidelines suggest a sentence of 87 to 108 months incarceration. The Court will note that the this adjusted guideline range is well below Ms. Larochelle's request to sentence her to a term of 10 years, or 120 months.

Defendant asserts that this guideline range takes into consideration of the factors that the 2012 and 2021 reports urge Courts to consider when sentencing in child pornography cases. Here the content of the Defendant's child pornography collection is minimal, does not depict sadistic acts and Defendant showed little to no organization, maintenance or protection of it during any measurable timeframe. Ms. LaRochelle was not involved in any way with an internet community devoted to child pornography or child sexual exploitation. Furthermore, other than her prior conviction from 10 years ago, the Defendant has been monitored and she has not engaged in a pattern of activity of sexual abuse or exploitation indicating that other than her prior conviction from 2016, she has no other history of engaging in sexually abusive, exploitative or predatory conduct in addition to the current child pornography offense. Ms. LaRochelle agrees that the ages of the victims are properly considered by the elevation of the offense level by a total of 4 points, as discussed in the PSR. Ms. LaRochelle asks the Court to sentence her to the mandatory minimum of 10 yeas and 5 years supervised release by taking into consideration certain aspects that are particular to her.

While Ms. LaRochelle presents as, and has not contested being competent, her disabilities and mental health have posed life long barriers to her success. Ms. LaRochelle's documented conditions include Autism Spectrum Disorder, clinical long-term and short-term memory loss,

low IQ, depression, bi-polar, Borderline Personality Disorder, and anxiety.[2]

The effect of this combination of disorders is "suggestibility,"[3] and Ms. LaRochelle's behavior can come across as immature. It is notable that the apps on one of Ms. LaRochelle's phones include games like My Little Pony, Pokemon GO, and Minecraft, which are geared for children. And from the Computer Crimes Narrative Report from Officer Northrup, Ms. LaRochelle commented about the number of officers executing the warrant, "Do there have to be this many cops?" a question that might sound more appropriate coming from a juvenile.

Each of Ms. LaRochelle's disorders provide layers of dysfunction. Ms. LaRochelle's autism gets in the way of social interaction and tends towards impulsivity.[4] According to her mother, Ms. LaRochelle "did not always seem to pick up on social cues and recognize appropriate versus inappropriate behavior."[5] She does not stop to think whether her actions would impact others.

In the evaluations, Ms. LaRochelle "reported that she has substantial difficulty resisting impulses and considering consequences before acting."[6] When Ms.

---

[2] [redacted] Psychological Evaluation, 06/06/2024, 06/26/2024, 06/28/2024, and 07/01/2024.

[3] [redacted] Criminal Psychological Assessment, 08/28/2015, "Since Ms. Larochelle's IQ is quite low, she remains a person who is at risk for suggestibility and victimization by others."; and "IQ is a fixed number that does not improve."

[4] [redacted] Report of Psychological Evaluation, 06/06/2024, 06/26/2024, 06/28/2024, and 07/01/2024, "she is unaware of the impact of her behavior on her social interactions with others. She reports that she finds topics of interest that she spends a lot of time focusing on and then moves on."

[5] [redacted] Report of Psychological Evaluation, 06/06/2024, 06/26/2024, 06/28/2024, and 07/01/2024.

[6] [redacted] Report of Psychological Evaluation, 06/06/2024, 06/26/2024, 06/28/2024, and 07/01/2024.

LaRochelle argued to her mother that "everyone who views my [Snapchat] story isn't from Maine and pay to see it I need money too…"[7] it is entirely possible that when the idea was posed to her, that Ms. LaRochelle acted on impulse.

Both psychological evaluations document Ms. LaRochelle's low IQ and clinical long-term and short-term memory loss. Ms. LaRochelle's verbal comprehension capacity was evaluated to be "in the low average range."[8] As a result, "[Ms. LaRochelle] has difficulty with understanding verbal and nonverbal information," especially when "the complexity of information increases."[9] With these limitations, she would be effectively incapable of grasping the gravity of the situation. IQ and memory disabilities further prevent Ms. LaRochelle from doing what she wants to do, "she would like to work but cannot remember what she is told."[10] Ms. LaRochelle was not capable of maintaining employment and had to utilize disability.

While Ms. LaRochelle has emotional roadblocks from comprehending others, she is not without her own emotional difficulties. Ms. LaRochelle "does not consider herself effective at the tasks of daily life," which gives her a low self-esteem.[11] She can have significant physical reactions to her internal emotions. When confronted by Officer Northrup, Ms. LaRochelle expressed that she "just wants her kids back." Ms. LaRochelle subsequently had a

---

[7] [redacted] Forensic Report, Maine State Police Computer Crimes Unit.
[8] [redacted] Report of Psychological Evaluation, 06/06/2024, 06/26/2024, 06/28/2024, and 07/01/2024.
[9] [redacted] Report of Psychological Evaluation, 06/06/2024, 06/26/2024, 06/28/2024, and 07/01/2024.
[10] [redacted]., Report of Psychological Evaluation, 06/06/2024, 06/26/2024, 06/28/2024, and 07/01/2024.
[11] [redacted] Criminal Psychological Assessment, 08/28/2015.

panic attack, followed by vomiting. Based on her conditions, this panic attack was not from a guilty conscience, but a sudden fear that she might be arrested.

An unfortunate impact from her low IQ and low self-esteem, is that Ms. LaRochelle makes bad judgments, particularly with her dating relationships. At the time of her first evaluation, she was 22, and her dating partners were 36 and 40.[12] This was the relationship that ended with her as a registered sex offender. At the time of her second evaluation, Ms. LaRochelle was 32, and her previous dating partner had been 65.[13] These are not peer relationships, but ones that put Ms. LaRochelle at risk of being taken advantage of, in that she "tends to be placating, passive, and insecure. When Ms. LaRochelle feels that someone has to lead her, she will turn over responsibility to them."[14] Moreover, her dating partners would abuse her, including forcing her to have sex when she did not want to.[15]

In her own estimation, Ms. LaRochelle "does not feel that she is able to navigate the world independently."[16] She would be appropriate for placement in a structured home where she can benefit from supervision, guidance, and adult-level decision making after her sentence of imprisonment where she should be required to attend and make use of any available services such as sex offender

---

[12] [redacted] Criminal Psychological Assessment, 08/28/2015.

[13] [redacted] Report of Psychological Evaluation, 06/06/2024, 06/26/2024, 06/28/2024, and 07/01/2024.

[14] [redacted] Report of Psychological Evaluation, 06/06/2024, 06/26/2024, 06/28/2024, and 07/01/2024.

[15] [redacted] Report of Psychological Evaluation, 06/06/2024, 06/26/2024, 06/28/2024, and 07/01/2024.

[16] [redacted]., Report of Psychological Evaluation, 06/06/2024, 06/26/2024, 06/28/2024, and 07/01/2024.

counseling and other counseling services. Ms. LaRochelle requests that this Court recommend that she serve her sentence at the Danbury CT. B.O.P. facility.

**CONCULSION**

All told, Ms. LaRochelle suggests that, by the Court considering the factors as laid out by the USSG's 2012 and 2021 reports and applying the reduction of 3 offense levels for her prompt acceptance of responsibility, her offense level would be at level 28 with a criminal history category of II, yielding a range of 87 to 108 months incarceration. Based on Ms. LaRochelle's above argument, and traits personal to her, Ms. LaRochelle asks this Court to sentence her to the mandatory minimum period of incarceration of 120 month as required by 18 U.S.C. § 2252A(b)(2), followed by a period of supervised release of 5 years, in addition to the mandatory assessment as required by statute.

Dated at Biddeford Maine this 19th day of October 2026.

/S/ Chris A. Nielsen
Chris A. Nielsen, Esq.
Attorney for Defendant

THE NIELSEN GROUP.
P.O. Box 351
Biddeford, Maine 04005-1871
(207) 571-8555

CERTIFICATE OF SERVICE

I, Chris A. Nielsen, Esq., hereby certify that the foregoing Defendant's Sentencing Memorandum has been

electronically sent to Asst. U.S. Attorney Chris McCormack for the Office of the United States Attorney on the 19th day of October 2026, through the court's ECF System, and to counsel of record.

/S/ Chris A. Nielsen
Chris A. Nielsen, Esq.
Attorney for Defendant

THE NIELSEN GROUP.
P.O. Box 351
Biddeford, Maine 04005-1871
(207) 571-8555